The next case on the call of the docket is Agenda No. 4, Case No. 131337, People v. Johnson. Is the attorney for the appellant ready to proceed? Please proceed. May I please report? Counsel, I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. There are really two questions before the court this morning. There is a simple question and a somewhat more complicated question. The simple question is, was the evidence at trial under the familiar Jackson standard sufficient to prove that the defendant committed first-degree murder? And the answer to that question is that, yes, it was sufficient. It is black-letter law that a single positive identification is sufficient to support a conviction. And here we have not one but three. And so to the extent that there were questions about whether there are inconsistencies between the three eyewitness accounts, whether one of the witnesses' prior identifications of the defendant as the shooter by name at the scene immediately after the shooting at the hospital later that night, from a photo array, whether those should be credited over his recantation at trial, whether there were differences in the quality of the different eyewitness' vantage points from which they observed the shooting, it is, again, black-letter law that all of those matters are reserved to the jury in its role as fact-finder on sufficiency review. And so that's why sufficiency requires that a reviewing court look at the evidence in the light most favorable to the prosecution and draw all reasonable inferences in favor of the prosecution. So when we look at these three eyewitness identifications, in that light, they were sufficient to support the jury's verdict. That's the simple question. The more complicated question is how did the majority below reach the contrary conclusion? And the answer to that question is that the majority below made three fundamental errors. It applied the wrong law. It considered the wrong facts. And it misapprehended its role in our judicial system as an intermediate state appellate court. I'd like to start with the question of the law that applied and the law that the majority below applied, because I think that that's really the root of the problem. That's what led us to the other two errors. The majority below applied Neal v. Biggers. And Neal v. Biggers' legal framework simply has no application on sufficiency review at all. Sufficiency review is governed by Jackson v. Virginia. That's the light most favorable standard we just discussed. Biggers addressed the admissibility of an identification made after an impermissibly suggested police procedure, and has said under those circumstances where a defendant has moved to suppress an identification on that ground that was the product of suggestion by police, a court has to look at the totality of the circumstances to determine whether that identification was sufficiently reliable that it can be presented to the jury for consideration, notwithstanding the taint of the suggested police procedure that preceded it. And that's simply irrelevant on sufficiency review. Once evidence has been presented before the jury, regardless of what that evidence is, eyewitness identification, fingerprint evidence, forensic evidence, any other sort of testimony, all of that evidence is reviewed under the same standard under Jackson, the light most favorable prosecution. So the error that the court below made was that it reviewed this specific evidence because it was eyewitness testimony, or eyewitness identifications, rather. It felt that under Biggers it was allowed to review that sort of in the first instance without deferring to the verdict that it entered below by the jury. And when it did that, it then substituted its own credibility determinations for those of the jury, which is exactly what a review in court may not do on sufficiency review. For example, I think the one that struck out to me the most was there was arguably, and I say arguably, an inconsistency between Janice Washington's description of the shooter's skin color. She said it was caramel. And Tristan Thomas's description of the shooter's skin color, he said it was light. So to the extent that that's an inconsistency, that's certainly exactly the sort of thing that we entrust to the jury in its role as fact finder. I would note that if we're viewing that in light most favorable to the prosecution, that's not inconsistency at all. A person can go through any cosmetic aisle in the country and see that one brand's caramel is another brand's light mocha, is another brand's deep tan. This is not the sort of thing that we would say, well, this renders one of these identifications credible as a matter of law. The other problem with the majority below's reliance on Neal v. Biggers is that it treated Neal v. Biggers as some way of cabining the totality of the circumstances that a fact finder is allowed to consider when weighing evidence. Now, Neal v. Biggers, by its own terms, said that when a court is reviewing the admissibility of an eyewitness identification that has been alleged to be the product of police suggestion, that you have to look at the totality of the circumstances. But the court in Biggers did specify five particular factors that it wanted to highlight. That's why we'll call it the Biggers factors for the purpose of this argument. But the court never suggested that those Biggers factors were in some way an exclusive list and that something was not one of those five factors. It was excluded from the totality of the circumstances, which is what the majority below treated Biggers as doing. For example, when the court looked at D'Angelo Mixon's identifications, a defendant by name at the scene of the crime and then later at the hospital and from the photo array, it rejected this court's guidance that an eyewitness's familiarity with an offender is relevant to whether their identification is reliable. It said, well, Biggers has no exception for eyewitness familiarity, and so you're not going to consider that at all. Whereas under Jackson v. Virginia, that is part of the totality of the circumstances, and that is part of the totality of the circumstances as we consider it in the light most favorable to the prosecution. Counsel, is the problem that the appellate court used the Biggers factor, or is the problem, as you see it, that they didn't adhere to the standard of looking at the evidence in the light most favorable to the state? It's the latter. The Biggers factors, the five specific factors, are, of course, relevant to a fact finder's consideration of the evidence at trial. And, again, Biggers says you look at the totality of the circumstances, not just those five factors. But it does talk about those five, and those five are certainly relevant. An eyewitness's opportunity to observe the offense is certainly relevant to whether a reasonable fact finder would credit that eyewitness's identification. But we have to look at the evidence of the eyewitness's opportunity to observe the offense in the light most favorable to the prosecution, drawing all reasonable inferences in the prosecution's favor. And that's what the majority below failed to do purportedly under the auspices of Biggers. So it's certainly not that the Biggers factors are irrelevant. It's just that they are relevant in the same way that all other factors relating to the reliability or credibility of a piece of evidence are relevant. It has to be reviewed in the same way as all those other factors or circumstances. The second main error that the majority below made, which I think stemmed from its indication of Biggers, was it considered the wrong evidence. Of course, the sufficiency of the evidence is reviewed based on the evidence that was presented at trial. It cannot possibly consider any evidence that wasn't presented at trial because no rational fact finder, faithfully performing their function, could consider matters outside the record when considering whether a defendant is or is not guilty. I think because the majority below, under the auspices of Biggers, believed that it was sort of reviewing these eyewitness identifications in the first instance, it looked beyond the record and considered two kinds of material that were simply inappropriate on sufficiency review. The first were academic articles regarding matters of uncommon knowledge. These are articles about, for example, the so-called weapon focus, that if a person is holding a gun or a weapon when they commit a crime, that an eyewitness will sort of focus laser-like on the weapon and be less able to identify the person holding the weapon later. There was another article that talked about the way that people's brains store identification information and retrieve that information under different circumstances that suggested that people might be less likely to, or more likely, rather, to misidentify a stranger as an acquaintance under stressful circumstances. Those are all perfectly appropriate matters to present to a jury through expert evidence, expert testimony. As this Court held in Lorma, in fact. In Lorma, this Court explained that because all those factors are so counterintuitive and so outside the common knowledge of a lay juror, they have to be presented through expert testimony. And that's why it's error not to allow a defendant to present such testimony. Here, the majority below simply looked at those articles on its own, found them very persuasive, and then relied upon them to discredit the eyewitness identifications that had been presented at trial. That was simply improper. This Court held that people decline, and the U.S. Supreme Court, of course, has held in Jackson and Herrera, that sufficiency review is limited to the evidence presented at trial. These matters outside trial are simply improper. Relatedly, the majority below relied on the split verdict that the jury returned. That also was not evidence presented at trial. If you imagine that defendant had been tried before simultaneous severed jury trials, one on the attempted murder count and one on the murder count, and one of the juries returned a verdict first, they found him not guilty of attempted murder, it would obviously be inappropriate to rush to the other jury's room where it's deliberating and let them know, just so you know, the other jury found him not guilty of attempted murder, so you should consider that in determining whether he committed first-degree murder. The verdict is not part of the evidence. And that really leads us to the third problem, which is the appellate majority's relationship with the precedent of this Court and the U.S. Supreme Court, because one of the reasons that the split verdict is improper to consider is, of course, that it is not the evidence of trial. The other reason is that the U.S. Supreme Court in the United States v. Powell said that it is improper to consider the fact that a jury returned a split verdict, that it found the evidence insufficient on one account. When considering the sufficiency of the evidence on another account, that, of course, is binding on the appellate court. The appellate court declined to follow that on the ground that it viewed that position as naive. Similarly, when the appellate court was considering whether an eyewitness's familiarity with a defendant is relevant to considering the credibility or reliability of that eyewitness's identification of that defendant as the offender, this Court in Brooks held that reliability is one of the most important factors because a person is less likely to misidentify someone they know. For example, here, D'Angelo Mixon had known the defendant for a number of years. They had been friends. Their families were enmeshed. And yet the appellate court said that because this Court's decision in Brooks explaining the significance of this factor was 25 years old and had cited a case that I believe was 55 years old, that the appellate court was entitled to view this Court's precedent with heightened scrutiny. But, of course, the appellate court has no authority to review this Court's precedent with any scrutiny. This Court's precedent is binding on the appellate court. So to the extent that the appellate court disagreed with this Court's precedent, the appropriate way to address that disagreement was to follow this Court's precedent and address its concerns with that precedent, to suggest to this court that if this court were to grant a petition for leave to appeal, it might want to reconsider that precedent. But that's a question for this Court, not the appellate court. So I think it is the reliance on Neil D. Biggers that sort of untethered the majority's analysis from Jackson v. Virginia and opened it up to these kinds of fundamental errors. So unless the Court has any questions, we would ask that this Court reverse the judgment of the appellate court and remain for consideration of the defendant's remaining claim. Thank you, Counsel. Good morning, Counsel. Good morning, Your Honors. Good morning. May it please the Court, Counsel. My name is Christina Solomon from the State Appellate Defender's Office, and I am here on behalf of Mr. Andrew Johnson, the appellee. The crux of this case is whether the eyewitness testimony for Mr. Johnson's trial was sufficient to establish his guilt beyond a reasonable doubt. The rest of the arguments presented are the State's attempts to use this case as a vehicle to make sweeping changes to established Illinois law and to police what a reviewing court is able to say in its analysis. This Court should decline to follow that lead. Ultimately, the eyewitnesses in this case were not credible, even in the light most favorable to the State, and this Court should affirm the appellate court's judgment. There was no evidence tying this shooting to Mr. Johnson aside from the eyewitness testimony. The recovered gun was not tied to him in any way. There was no DNA evidence, no gunshot residue, and there was not even a tie to him to the location where the gun was recovered. Mr. Johnson never made any inculpatory statements. The State presented no evidence of motive, and so the State's case really did rely exclusively on eyewitness testimony. The State does not discuss the credibility of the witnesses in depth, but we must because that is the foundational issue here. Simply put, viewing the testimony altogether, even in the light most favorable to the State, the evidence was insufficient to sustain Mr. Johnson's conviction. This standard is intended not to make reviewing courts a rubber stamp for a jury's verdict, but rather there's supposed to be a backstop against unreasonable inferences. The State is not entitled to have a reviewing court ignore evidence that is unfavorable to it under this standard. So here, the inconsistencies of each witness, especially when viewed in the entirety of the context of the trial, were too great to reasonably infer that Mr. Johnson was the shooter. So even when we take the State's witnesses, physical descriptions of the shooter as truth, they're rife with inconsistencies. One shooter says that, I'm sorry, one witness... I think to follow up on Justice Holder White's question, at heart here it seems to me that what we're really talking about is trying to understand what is the standard of review. These words that easily come out of our mouth, but what does it really mean? Certainly, you're not making any arguments here that there was error during the trial, and all of the arguments about the strength or weaknesses of the evidence was presented to the jury, and the jury heard all of that, and returned a verdict, right? So what do we mean when we say reviewing... Well, let's say the defendant in this case said that this analysis from the majority usurped the jury's prerogative and invades the province of the jury. In response to that, the majority said, while we defer to a jury as a trier of fact, that deference does not replace our role of oversight. Now, again, to me those words are struggling about what is the standard of review? What role does the appellate court have when evidence has been presented to a jury, they've been properly instructed, and they come out with a verdict that here was guilty? So what do we mean by the standard of review here in the light most favorable to the State? It must have some meaning. Of course, Your Honor. The parties agree, of course, the standard is to view the evidence in the light most favorable to the State. And what that means is that reasonable inferences from the testimony from trial be taken as true in favor of the State. However, our argument here is that the inconsistencies among the witnesses, the recantations at trial, when you view the testimony in its entirety, you see that there were unreasonable inferences made by, you know, that led to the conclusion that Mr. Johnson was guilty. Am I right that sometimes we talk about the standard of review as that no rational jury could find these facts? Is that another way to talk about it? Yes, Your Honor. So you're saying that no rational jury, understanding that there are inconsistencies, could have come to this conclusion of guilt. Is that right? That is our argument. That in light of the testimony on the whole, when you see the fact that D'Angelo Mixon testified at trial that he was focused on the gun and not the shooter, when you know that Janiece Washington had a blocked view of the shooting and that her husband, Robert Laster, who had a better view of the shooting, was not able to make an identification in a photo array and, in fact, identified somebody else during a live lineup, these inconsistencies show that it would be an unreasonable inference. And so, yes, that's our argument here, is that because of these inconsistencies, it's irrational to conclude that Mr. Johnson was, in fact, the shooter, based on these identifications from these witnesses. So, Counselor, are you suggesting that the appellate court needed to review each of those pieces of evidence that you just highlighted and determine whether they would have come to a different conclusion? No, Your Honor, not necessarily. It's vital that the appellate court or any reviewing court consider all of the evidence from the trial, including the evidence that's not favorable to the State. The conclusion that it comes to, of course, must be reasonable, and that is to say it doesn't have to come to the conclusion that I would like it to come to, but I think that at the end of the day, the duty of a reviewing court is to look at all of the evidence presented. And so, Your Honors, if I would continue to talk about some of the witnesses' inconsistencies, as I already mentioned that Mixon said that the gun was one foot away. Counsel, that's what I was asking. I mean, you're going through all of these inconsistencies, so it sounds to me like you're suggesting that based on that, as you have highlighted all of these inconsistencies, the appellate court had a duty to review all of those and conclude that no rational jury could have looked at those inconsistencies and come to the conclusion that the defendant was guilty. Is that what you're saying? Okay. Yes, Your Honor. And in this case, that is what I'm saying. In other cases, I can't say, but in this case, yes. Because of the evidence that did come out at trial in this case, because of the way D'Angelo Mixon testified and Thomas testified and Janice Washington as well, Robert Laster, all of their testimony presented necessarily leads to the implication that it's unreasonable to find that Mr. Johnson was the shooter here. Counsel, do you agree that it would be inappropriate for the appellate court to substitute its judgment for the jury's determination here? Yes, Your Honor. That would be inappropriate, but that's not what the appellate court did here. The appellate court reasoned, looked through factors, looked through the relevant factors to determine that the inconsistencies were overwhelming such that it would be unreasonable to infer the conclusion. However, it is— I'm sorry. What about the appellate court's talking about these studies that weren't in evidence? Yes, Your Honor. Was that appropriate? Yes, Your Honor. In this case here, the appellate court did not improperly cite those secondary sources. The state sources, the state says that because these secondary sources were not brought up at trial that they didn't have an opportunity to contest, but that's factually untrue. Defense counsel argued several of these factors at trial. One of the ones that counsel argued was the weapons focus, discussion of weapons focus from the appellate court's opinion. Defense counsel, in fact, did argue that weapons focus affected Nixon's ability to view the shooter. Were the reports themselves, were they part of the record from the court below? No, Your Honor. The secondary sources themselves were not part of the record. However, the material that was in the secondary sources was largely common sense, well-known phenomena that were, in fact, factors discussed at trial. Again, the weapons focus. And so did the appellate court simply rely on the arguments of counsel and those things, or did the appellate court specifically rely on the reports that were not part of the record? I would not say that the appellate court relied on the reports, Your Honor. I would say that it used the reports as a way of explaining its reasoning, and that's part of why it's important to continue to allow reviewing courts to do so. I would say that the appellate court's use of the secondary sources here is a little bit more akin to using out-of-state cases or out-of-jurisdiction cases, federal cases, to kind of help assist lower courts, follow their mandates, explain the court's reasoning in coming to its conclusion. I think that in many of these cases, you can take what the appellate court cited to in the secondary source, not only tie it to something that, you know, defense counsel argued, weapons focus, intoxication, the lack of specificity of the witnesses regarding what the shooter looked like, and those factors are things that, you know, are not only part of what's considered as relevant under the biggest factors, but also something that defense counsel argued in the closing arguments at trial. So what about the appellate court's consideration of the split verdict? Excuse me, Your Honor. Sure. The consideration of the split verdict, first of all, was by the appellate court pretty minimal, but more than that, the state's interpretation of Powell here is extreme. Powell held that a jury split verdict is not in and of itself a reason to vacate a conviction, and that is not what the appellate court did here. The state, you know, is asking, again, for increased restrictions on what an appellate court can say. To ban a reviewing court from even mentioning that a defendant was acquitted on another count is an extreme interpretation, that's our argument, of Powell. And so here the appellate court's references to the jury verdict, a split jury verdict, could be removed from the opinion, and the judgment would ultimately remain the same. It wasn't a definitive factor in the opinion in coming to its conclusion. And so because of that, the reference to the split verdict wasn't an error, much less a violation of the supremacy clause. I would like to out-conclude if this court doesn't have any further questions. I'll conclude by asking this court to affirm the appellate court's judgment. Thank you. Thank you very much, Kelsey. I'd like to return to the sort of opening framework. There's an easy question and a hard question. The easy question, again, is just whether the evidence was sufficient. And here we have three eyewitnesses that are sufficient. All of the arguments about, well, were there reasons that they might not be credible, all of those are exactly the sorts of things that we entrust to the jury in its role as a fact-finder. The harder question is, again, how the majority below made this error. And I want to be clear, the people's position is not that the appellate court has to be limited in what it can say in its opinions. We're not grading their writing. We're saying that the appellate court cannot announce in its opinion that it is not following the law and that it is applying something other than the law. The majority below repeatedly stated that it was reviewing the sufficiency of the evidence under the standards set out in Neal v. Biggert. That is incorrect. That is not the law. The majority below said that it was considering the split verdict as support for its conclusion that the evidence was insufficient. That is not proper under the appellate, under Jackson itself. I don't think that it is a reasonable interpretation of an appellate opinion as a piece of judicial writing to view these sorts of comments as sort of non sequiturs. Well, they said they considered the split verdict, but they probably didn't mean it. They didn't rely on it that much, and so therefore we can sort of ignore it. This is precedent in the state of Illinois, and it is critical that the body of precedent in the state of Illinois be not only uniform but correct in its uniformity. And so we ask that the court not simply treat this as a matter of error correction about whether the evidence was or was not sufficient, but specifically address the legal errors that the majority below made to prevent those errors from being made in the future. Unless there are any questions, we ask. Thank you, counsel. Thank you. Case number 131337, People v. Johnson, is taken under advisement as agenda number four. The court thanks the attorneys for their arguments.